# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jarode Jermaine Witherspoon, | ) CIVIL ACTION NO. 9:13-2942-MGL-BM |
| Plaintiff, | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Sgt. S. Mr. Forten Berry, Ofc. T. Hall; Ms. L. Judd, Mr. D. Lane, Captain B. Tucker, Lt. More, Lt. Copeland, Mr. Tim Riley, Ofc. Bobo, and Ms. NFN Gray, | ) |
| Defendants. | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on September 17, 2014. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on September 18, 2014, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion, with attached exhibits, on October 17, 2014, following which the Defendants filed a reply memorandum on November 3, 2014.



1

In addition to these filings, the Court notes that Plaintiff also filed "Declarations" with attached exhibits on January 9, 2014, June 9, 2014, and June 13, 2014, all of which have also been considered in evaluating the merits of the summary judgment motion. Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that at the time he filed this action, he is an inmate at the Tyger River Correctional Institution (TRCI).[3] Plaintiff alleges that the officers and staff listed as Defendants in the case violated his constitutional rights by placing his life in danger by installing a "steel boot blocker on the bottom of my room door". Plaintiff alleges that (at the time of the filing of the Complaint)[4] this steel boot had been on his cell door for over 190 days. Plaintiff also complains that his cell has mold and stinks, and that on September 24, 2013 he "passed out" because there was no air in his cell. Plaintiff further complains that other inmates on his cellblock are telling the officers, including the Defendant Captain Tucker, to "gas" him, and that although he complains, the officers "don't say or do nothing" in response to these "threats".

Plaintiff also complains that he was removed from the general population by the Defendant Officer Bobo who placed him in the SMU because he [Plaintiff] allegedly "pulled out

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3]Since the filing of this action, Plaintiff was transferred to the Broad River Correctional Institution (BRCI). See Court Docket No. 25 [Change of Address Notice].

[4]Plaintiff's Complaint is dated September 26, 2013.



2

my private part & started wagging", although Plaintiff alleges he never engaged in this conduct. Plaintiff complains that he is separated (presumably from other inmates) when he takes showers, apparently because another inmate threw bodily waste on him in the shower after Plaintiff allegedly engaged in a sex act. Although Plaintiff's claim is hard to decipher, he apparently contends that he never engaged in this conduct and was falsely charged. Plaintiff also complains that four other inmates at TRCI got better treatment than he did because they got medical clearances for transfer to the Allendale or Evans Correctional Institutions.

Plaintiff wants the Court to order the "boot" removed from his cell door, that he be ordered transferred to another institution, that certain "memos" be removed from his file and that he be taken off "separation", and that he be awarded monetary damages.

Plaintiff has also attached numerous handwritten papers and forms to his Complaint that discuss a variety of issues and include various statements, many of which are so incomprehensible and filled with what could only be considered by a reasonable person as unconnected, conclusory, and unsupported comments or "gibberish", that it is unclear what is to be made of them. See Hagans v. Lavine, 415 U.S. 528, 536-537 (1974) [Noting that federal courts lack power to entertain claims that are "so attenuated and unsubstantial as to be absolutely devoid of merit"]; see also Livingston v. Idirondack Beverage Co., 141 F.3d 434 (2nd Cir. 1998); Adams v. Rice, 40 F.3d 72 (4th Cir. 1994) [Affirming dismissal of plaintiff's suit as frivolous where allegations were conclusory and nonsensical on their face]. Similarly, Plaintiff's "Declarations" filed on January 9, June 9, and June 13, 2014 are also extremely hard to decipher and contain random comments, statements and paragraphs, but which also do contain some statements and information relevant to the claims asserted in this lawsuit and, to that extent, have been considered to the extent decipherable or understandable. These filings also contain copies of Disciplinary Reports and

3



hearing records, Incidents Reports, Request to Staff Member forms, and Grievance forms, at least some of which appear to relate to the claims set forth by Plaintiff in his Complaint. Specifically, in an Incident Report dated December 20, 2013, the narrative reflects that Plaintiff was "staged in the West Wing shower" for approximately five minutes while some paperwork was being notarized, and that when the Defendant Tucker and another correctional officer (Sgt. Nix) came back to get him another inmate asked Tucker to "please get this man off of our wing", following which Plaintiff made threatening statements toward the inmate. See Court Docket No. 14-1, p. 5. In another Incident Report dated June 26, 2013, Plaintiff was yelling at other inmates, and when Sgt. Nix asked him to stop, Plaintiff refused, "went on yelling", and made sexually offensive comments to Nix along with that "he knew how to make a pipe bomb". See Court Docket No. 14-1, p. 4. Plaintiff has also provided Disciplinary Report and Hearing Record forms with respect to these two incidents. See Court Docket No. 14-1, pp. 2, 3.

In support of summary judgment in the case, the Defendant Warden Tim Riley has provided an affidavit wherein he attests that he is the Warden at TRCI, and that Plaintiff was transferred to TRCI on or about June 14, 2010 and housed in the Special Management Unit (SMU). Riley attests that Plaintiff was subsequently transferred to BRCI on February 24, 2014, to participate in a sex offender treatment program, but that Plaintiff was kicked out of that treatment program for failing to comply with the rules, creating a negative atmosphere for the other program participants, and using profanity and making sexual slurs, following which he was returned to TRCI on July 25, 2014.[5]

Riley attests that Plaintiff is designated as a PREA (Prison Rape Elimination Act)

---

[5]The docket does not reflect a change of address notification having been filed to document this later transfer.



inmate due to his extensive documented disciplinary history and sexually related conduct during his incarceration, and that as a PREA inmate, he is classified as Security Detention Level II and is housed in the SMU, a classification that is reviewed in accordance with SCDC policy. Riley further attests that during Plaintiff's incarceration at TRCI, he has been found guilty of multiple disciplinary infractions, including unauthorized inmate organization activity or participating in a security threat group, striking an employee, and multiple charges to inflict harm on an employee.

Riley attests that all inmates housed in the SMU, including the Plaintiff, shower separately and that no inmate housed in the SMU is permitted to shower with other inmates. Riley further attests that all SMU inmates are afforded an opportunity to qualify for recreation, and that if Plaintiff did not have recreation, it was because he failed to qualify by committing a disciplinary infraction that resulted in his forfeiture of this privilege. However, when Plaintiff does qualify, Riley attests that Plaintiff received recreation separately due to his behavioral history and for his own protection. Riley attests that to the extent Plaintiff is unable to exercise in the yard, he is provided with a copy of the in-cell exercise program so that he can exercise. Finally, Riley attests that a device was attached to Plaintiff's cell door to prevent him from illegally communicating and/or passing objects to other inmates. Riley attests that the device was placed on Plaintiff's cell door as a result of Plaintiff's own conduct and actions.

Riley has attached to his affidavit as exhibits copies of various records relating to the Plaintiff, to include Disciplinary Report and Hearing records documenting Plaintiff's convictions for various offenses, Incident Reports, Classification Committee Review documents showing periodic review of Plaintiff's classification status, Cell Assignment forms, Request to Staff Member forms that have been submitted by the Plaintiff, Disciplinary System Inmate Offense Histories showing Plaintiff's convictions on numerous charges, and a document listing the numerous



disciplinary sanctions imposed on the Plaintiff as a result of his disciplinary convictions. See generally, Riley Affidavit, with attached Exhibits.

As attachments to his memorandum (which actually appears to be several one page memoranda) in opposition to summary judgment, Plaintiff has attached several exhibits consisting of Request to Staff Member forms and Inmate Request forms, all of which post date the allegations of his Complaint.

**Discussion**

As noted, the Defendants have moved for summary judgment on all of Plaintiff's claims. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented pursuant to these standards, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.



First, it must be noted that Plaintiff does not even mention most of the Defendants he has named in this case anywhere in the narrative of his claims. In order to state a damages claim against, and survive summary judgment in favor of, any of these Defendants in their individual capacities, Plaintiff must set forth factual allegations sufficient to establish a question of fact as to whether a named Defendant engaged in conduct that violated his constitutional rights. Gomez v. Toledo, 446 U.S. 635, 640 (1980); see Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1999)["Liability . . . must be based on the personal involvement of the Defendant"], cert denied, 522 U.S. 1154 (1999); Wilson v. Cooper, 922 F.Supp. 1286, 1293 (N.D.Il. 1996). Other than with respect to the Defendants Tucker and Bobo (and perhaps possibly the Defendant Riley, Warden of the Institution and who may therefore be responsible for Plaintiff's classification), Plaintiff has made no such factual allegations against any of the other Defendants named in the caption of his Complaint. Therefore, even if this case were to otherwise proceed, these remaining individuals are all entitled to dismissal as party Defendants. Horton v. Marovich, 925 F.Supp. 540 (N.D.Il. 1996)["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right"].

Even with respect to Tucker, Bobo and Riley, Plaintiff's assertions are essentially a hodgepoge of varying conclusory claims and allegations, none of which are supported by evidence sufficient to allow this case to proceed. During the time period at issue, Plaintiff was a prisoner being held in a heightened security unit of a state prison, not a hotel. It is to be expected that conditions of confinement under such circumstances are often times less than ideal. Hadley v. Peters, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."]



(quoting Harris v. Fleming, 839 F.2d at 1232, 1235 (7th Cir. 1988). Therefore, the only issue for this Court to decide is whether the evidence presents a sufficient question of fact as to whether the conditions under which Plaintiff was confined violated his constitutional right to be free from conditions so deplorable that they could be deemed cruel and unusual punishment. Plaintiff has presented no such evidence.

With respect to his placement in the SMU itself, Plaintiff has no general constitutional right to placement in any particular prison or to certain privileges, nor does he have any constitutional right to placement in any particular custody classification. See Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]. Therefore, in order to state a § 1983 claim based on his placement in the SMU alone, Plaintiff would have to present evidence sufficient to show that the Defendants' decision in his case was arbitrary, capricious, or based on some other unlawful motive. See generally, Sandin v. Connor, 515 U.S. 472, 478 (1995); Marchesani v. McCune, 531 F.2d 459, 462 (10th Cir. 1976), cert. denied, 429 U.S. 846 (1976)[classification generally upheld unless inmate proves arbitrary and capricious or a clear abuse of discretion]; Crowe v. Leeke, 259 S.E.2d 614, 615 (1979).

Again, Plaintiff has presented no such evidence. To the contrary, the evidence before the Court (including Plaintiff's own exhibits) confirm that the reason he is in the SMU is because



8

of multiple and continuous disciplinary convictions.  Substantial documentary evidence has also been submitted to the Court to show that Plaintiff receives periodic reviews of his classification and custody status.  Hence, while Plaintiff may not agree with his custody status, and asks to be removed from "segregation" and (presumably) placed back in the general population, there is no evidence before the Court to show that his continued incarceration in the SMU is arbitrary, capricious, are based on some other unlawful motive.  See generally Sweet v. South Carolina Department of Corrections, 529 F.2d 854, 859 (4th Cir. 1975) (en banc) [describing federal court's deference to prison administrators on all administrative matters unless the condition rises to the level of a constitutional violation]; Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997) [Inmate's confinement in Administrative Segregation does not impose such an atypical hardship so as to implicate a liberty interest]; Jones v. Walker, 358 Fed. Appx. 708, 712 (7th Cir. 2009)[Inmates do not have a liberty interest in avoiding placement in discretionary segregation, meaning "segregation" imposed for administrative, protective, or investigative purposes]; Marchesani, 531 F.2d at 462 [classification generally upheld unless inmate proves arbitrary and capricious or a clear abuse of discretion]; Neals, 59 F.3d at 533 ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]; cf. Jordan v. Federal Bureau of Prisons, 191 Fed. Appx. 639, 652-653 (10th Cir. 2006)[Noting that inmate's placement in administrative detention for almost five years did not implicate a liberty interest protected by due process, because it resulted from an ongoing investigation of murder within the prison, of which inmate was a suspect, and officials were aware of his violent history].

With respect to the *conditions* of Plaintiff's confinement in the SMU, again there is no evidence before the Court sufficient to give rise to a genuine issue of fact as to whether a



constitutional violation has occurred.  First, Plaintiff's complaint about a "steel boot" being placed on his cell does not in and of itself establish a violation of a constitutional right.  Riley attests that this device was placed on Plaintiff's cell door to keep him from unlawfully communicating with other inmates in the SMU, which is a not unusual precaution, particularly in heightened security or administrative segregation units.  In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ["Prison officials 'should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'"] (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)).  Plaintiff being upset about the placement of this steel boot on his cell door, apparently because it was successful in preventing him from engaging in the very conduct prison officials were attempting to prevent, does not equate to a violation of his constitutional rights.  Overton v. Bazzetta, 539 U.S. 126, 132 (2003) ["We must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"]; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) [Prison officials have legitimate penological interests in Administrative Segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"], reh'd denied, 75 F.3d 448 (9th Cir. 1995), cert. denied, County of Kern v. Anderson, 116 S.Ct. 306 (1995).

With respect to any remaining claims concerning the conditions of his confinement, Plaintiff has failed to present any evidence to support his general and conclusory claims that the conditions in his cell were so vile and unhealthy as to give to a constitutional violation.  Plaintiff only generally asserts, without providing any supporting evidence to show the truth or extent of the

10



conditions alleged, that his cell had mold, had poor air circulation sufficient to cause him to "pass out", and that presumably he is not provided adequate opportunity to exercise. Such conclusory allegations without any supporting evidence are simply not in and of themselves sufficient to maintain a constitutional claim or to survive summary judgment. See generally Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; see also Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["even though pro se litigants are held to less stringent pleading standards than attorneys, the Court is not required to 'accept as true legal conclusions or unwarranted factual inferences'"]; Baber, 977 F.2d at 874-75 [To survive a motion for summary judgment, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial]; Johnson v, 718 F.Supp. at 38 ["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would entitle the plaintiff to relief"]; see also Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986) [Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, or emotional deterioration."]. Weens v Lawrence, No. 09-65, 2009 WL 2422795 at --- 2-3 (S.D.Ga. Aug, 6, 2009)[shackling pre-trial detainee during exercise did not violate Fourteenth Amendment]; Ruffino v. Lawrence, No. 08-1521, 2010 WL 908993 at * 5 (D.Conn. Mar. 9, 2010)[citing numerous cases upholding inmates being required to wear restraints during exercise and finding no contrary decisions]; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eight Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the



prisoner's unwilling exposure to the challenged conditions"]; Chavis v. Fairman, No. 94-1503, 1995 WL 156599 at — 5-6 (7th Cir. Apr. 6, 1995)["Generally, even dramatic restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have ample opportunity to enjoy indoor activity."]. Further, Plaintiff has also failed to present any evidence to show that he has suffered any injury as a result of the conditions alleged. Holley v. Johnson, No. 08-629, 2010 WL 2640328 at * * 9-15 (W.D.Va. June 30, 2010) [noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does]; cf. Danser v. Stansberry, 772 F.3d 340 (4th Cir. 2014) [A prisoner must establish a serious deprivation of rights in the form of a serious or significant physical or emotional injury to maintain a conditions of confinement claim].

To the extent Plaintiff is complaining about his disciplinary convictions, Plaintiff has failed to provide any evidence to show that any of his due process rights were violated by any named Defendant. See Superintendent, Massachusetts Correction Institution v. Hill, 472 U.S. 445, 456-457 (1985) [In an institutional setting, the fact-finder need only show that some evidence existed to support his conclusion]; see also Wolff v. McDonald, 418 U.S. 539, 563-576 (1974). Rather, he just simply complains about the fact of his convictions, without providing any evidence to show the violation of a constitutional right. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations].

Plaintiff's claim that four other inmates received better or more favorable treatment than he did, assumed to be an equal protection claim, is also without merit. Generally, the question of whether the Equal Protection Clause has been violated arises when a state or federal action grants a particular class of individuals the right to engage in an activity while denying that same right to



other individuals, although it is also possible to make an equal protection claim if one is singled out as an individual for "arbitrary and irrational treatment" with no rational basis for such disparate treatment, even if one is not being discriminated against as a member of a certain group. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Willis v. Town of Marshall, N.C., 426 F.3d 251, 263 (4th Cir. 2005). Again, however, Plaintiff has submitted nothing but conclusory allegations and statements that some other inmates received more favorable treatment than he did by receiving medical transfers when he was not afforded a medical transfer. Plaintiff has provided no evidence to show who these other inmates were or that there was no "rational basis" for these inmates being transferred while he was not, or even that their transfers resulted in better conditions or treatment for them. Thus, Plaintiff has failed to submit the necessary elements to establish an equal protection claim; i.e., that he and a similarly situated comparator were treated differently with respect to a constitutionally protected right or interest, that the different treatment was the result of the Defendants' discrimination, that the Defendants' disparate treatment was not reasonably related to any legitimate penalogical interest, or that he was otherwise subjected to "arbitrary and irrational" treatment.

Finally, with respect to Plaintiff's claim that one or more of the Defendants put his personal safety at risk by placing the "boot" on his cell door or by somehow not protecting him from other inmates who he apparently contends were saying bad or untrue things about him, in order to avoid summary judgment Plaintiff must have evidence to demonstrate both that he was detained or incarcerated "under conditions posing a substantial risk of serious harm"; Brown v. Harris, 240 F.3d 383, 388-389 (4th Cir. 2001), quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994); and that the offending official(s) had "a sufficiently culpable state of mind" in failing to protect him from such conditions. Farmer, 511 U.S. at 834. In other words, a jail official cannot be found liable for a



constitutional violation "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference". Farmer, 511 U.S. at 837; see also Pruitt, 2003 WL 23851094 at * 9 [Deliberate or callous indifference on the part of prison officials to a specific known risk of harm is what states a constitutional claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. Mar. 11, 1997)["A defendant acts with deliberate indifference . . . if he or she 'knows of and disregards' an excessive risk to inmate health or safety]. Plaintiff has presented no evidence whatsoever to establish, or give rise to a genuine issue of fact with regard to, such a claim. To the contrary, Plaintiff's allegations are that other inmates complained *about him* and his conduct *towards them*, apparently with respect to Plaintiff engaging in sexually offensive behavior. While Plaintiff alleges that other inmates were urging correctional officers to "gas" him, there is no evidence that any officer ever did so, and Plaintiff has provided no evidence to show that any other inmate threatened him directly or that any Defendant was aware of any such threat. Indeed, part of Plaintiff's complaint in this lawsuit is that the Defendants were keeping him *segregated* from other inmates due to his offender status, even though Plaintiff wanted to be placed back into the general population. Hence, Plaintiff's failure to protect claim is patently without merit. Farmer, 511 U.S. at 842 [To establish a prima facie case of deliberate indifference a plaintiff must show "that a substantial risk of [serious harm] was long standing, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it"].

      By reaching the conclusion herein that no compensable constitutional violation has been shown in the evidence presented, the undersigned does not intend to signal a lack of concern



over Plaintiff's complaints. However, he has simply failed to submit any evidence to support his general and conclusory claims of unconstitutional conditions of confinement. See generally, Slezak, 21 F.3d at 590 [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; cf. Shakka, 71 F.3d at 166 ["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eight Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"]; Davidson v. Coughlin, 968 F.Supp. 121, 129-130 (S.D.N.Y. 1997)[Discussing standard for evaluating whether exercise deprivation fell below objective standard of Eighth Amendment]. Hence, while Plaintiff may have some state law claim or administrative process he could pursue with respect to his complaints, absent some evidence of a significant injury suffered by the Plaintiff as a result of conditions deemed to be unconstitutional, or other accompanying factors not present in this case, the undersigned does not find that Plaintiff has presented a genuine issue of fact as to whether his *constitutional rights* have been violated sufficient to survive summary judgment. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right].



## **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 19, 2015
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

